**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irma Gonzalez, | No. CV-21-01851-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Irma S. Gonzalez's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under Title II of the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15) and Defendant Social Security Administration Commissioner's Response Brief (Doc. 16). The Court has reviewed the briefs, Administrative Record (Doc. 14, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 26-37) and affirms the ALJ's decision for the reasons addressed herein.

**I.   BACKGROUND**

Plaintiff protectively filed an application for DIB on February 28, 2019, for a period of disability beginning on June 3, 2016.[1] (R. at 26). Plaintiff's claims were denied initially on June 27, 2019, and upon reconsideration on January 7, 2020. (*Id.*) Plaintiff testified

---

[1] Plaintiff later amended her onset date of disability to October 16, 2017, during her hearing on December 2, 2020.

before an ALJ in a hearing regarding her claims on December 2, 2020. (*Id*.) The ALJ denied her claims on February 2, 2021. (R. at 26-37). On September 9, 2021, the Appeals Council denied her request for review of the ALJ's decision. (R. at 1-3). On November 3, 2021, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of migraine headaches, dizziness, vertigo, cranial neuralgia, and chronic pain syndrome. (R. at 29).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 37). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 31). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b)" with certain functional limitations and concluded that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (R. at 32, 36).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of

supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) whether the ALJ erroneously rejected Plaintiff's symptom testimony; and (2) whether the ALJ properly considered lay witness testimony. (Doc. 15 at 1). Plaintiff also requests this Court to remand the case for an award of benefits. (*Id.*)

**A. The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony. (Doc. 15 at 5-14.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for

discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

In the present case, Plaintiff argues the ALJ failed to present specific reasons from the medical record that were inconsistent with Plaintiff's symptom testimony. (Doc. 15 at 7). Plaintiff takes issue with the ALJ's decision that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (*Id.*) Plaintiff believes that the ALJ failed to elucidate how the objective findings undermine any specific statements of Plaintiff's testimony. (*Id.*) The Court does not agree. It is apparent from the record as a whole that the ALJ used a multitude of specific reasons that are supported by substantial evidence to discount the Plaintiff's symptom testimony. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680.

Plaintiff primarily objects to the ALJ's findings regarding Plaintiff's migraines and headaches and argues the ALJ did not properly consider these impairments when discounting the symptom testimony.[2] (Doc. 15 at 5-7). The ALJ noted Plaintiff's testimony that her migraines and headaches caused vertigo and dizziness that can last three to four days and were accompanied with abdominal issues and vomiting. (R. at 32-33). Plaintiff testified that the headaches occurred four to five times a month and she must move slowly to avoid vertigo during this time. (R. at 33). The ALJ further noted that Plaintiff testified she is unable to stand for more than five minutes and has required the use of a cane to ambulate for the past four years. (R. at 33, 61). However, although the ALJ found that the record showed some treatment for migraines and headaches accompanied by various side-effects as listed above, the ALJ determined the Plaintiff's statements about her symptoms

---

[2] Although the ALJ listed additional physical impairments, Plaintiff's arguments principally lie within the context of the ALJ's discussion surrounding Plaintiff's headaches and migraines.

were not consistent with the medical record. (*Id*.) Most notably, the ALJ discussed findings of a February 2018 MRI scan that showed a congenital arachnoid cyst that was contralateral to the Plaintiff's headaches, but because it was on the opposite side of her head, it was unlikely the cyst had a direct effect on Plaintiff or was related to the headaches. (R. at 33, 345). Plaintiff argues that the ALJ mischaracterized the medical record with regards to the diagnostic summary of treating physician, James Grisolia, MD. (Doc. 15 at 13). Plaintiff asserts that Dr. Grisolia opined the cyst could be causing meningeal traction headaches. (*Id*.) The full statement in question by Dr. Grisolia is as follows, "I have again explained that since cyst is on opposite side, unlikely to have direct relation to [headaches] but possible it may cause some meningeal traction." (R. at 345). The Court does not find the reference to Dr. Grisolia's medical note in the ALJ's written decision to be a mischaracterization of the medical record. Additional treatment notes in the record indicate Plaintiff obtained secondary medical opinions from multiple treating physicians who likewise opined that the cyst was asymptomatic, and believed it was not responsible for any of Plaintiff's headache symptoms, and surgery was not required. (R. at 352, 436, 468).

Plaintiff's medical record is also replete with evidence to support the ALJ's finding that the objective medical evidence was not consistent with Plaintiff's claims. The ALJ noted a February 2019 neurosurgeon consultation which found the Plaintiff's cyst to be asymptomatic. (R. at 33, 352). This February 2019 examination also found that, "[Plaintiff] denies left sided headaches. She also denies tinnitus, ringing in her ears, seizures, speech difficulties, right hemiparesis or sensory changes…. [Plaintiff] noted some worsening of her right sided headaches back in 2016, but since then it has been stable." (R. at 351). The examination also found that Plaintiff was alert and cooperative, motor strength was 5/5 throughout upper and lower extremities, and gait was "normal *without the use of any assistant devices*." (R. at 352). (emphasis added). Additional progress notes within the medical record similarly find that during medical visits in April and October 2019, the Plaintiff denied headache or sleep disturbance, and denied joint stiffness, muscle aches, painful or swollen joints. (R. at 402, 408-09). A secondary medical visit from October 2019

also indicated normal findings by the medical provider regarding Plaintiff's neurological exam and all four extremities. (R. at 423). In addition, the ALJ reported a December 2019 radiograph of Plaintiff's brain showed no acute intracranial abnormality. (R. at 33, 436). Furthermore, the ALJ documented in her decision a June 2020 assessment of Plaintiff by a treating source who agreed with previous medical opinions that surgery was unwarranted for Plaintiff's cyst. (R. at 33, 468). The examining neurosurgeon stated, "In fact, I am not sure whether this MRI finding is at all responsible for any of [Plaintiff's] right-sided symptoms." (R. at 468).

Moreover, the ALJ discerned that the Plaintiff's frequency and duration of Plaintiff's headaches was not consistently reported throughout the medical records, but for an October 2020 evaluation where Plaintiff alleged two headaches per month lasting three to four days. (R. at 34, 471). Yet even the medical provider in this evaluation surmised that Plaintiff's cyst is likely incidental, she had normal gait without any difficulty, and advised that Plaintiff's "nightly nausea would not be accountable for by her intermittent migraine." (R. at 472). In support of the ALJ's findings regarding the inconsistency of Plaintiff's headaches, the record indicates a second October 2020 evaluation stating Plaintiff had "controlled migraines." (R. at 463). Further, in July 2020, Plaintiff reported using NSAIDS "with some relief of symptoms." (R. at 441). Given the extensive medical evidence, the Court finds it was reasonable for the ALJ to determine that the objective medical evidence was not consistent with the Plaintiff's symptom testimony.

The ALJ also noted that Plaintiff was presented with various treatment strategies consisting of physical therapy, trigger and point injections, occipital blocks and pharmacotherapy even though Plaintiff testified that she was only recommended medication by doctors as a means to treat her headaches and migraines. (R. at 33, 64). The ALJ discussed how Plaintiff opted for pharmacotherapy and was originally prescribed Topamax for headaches in November 2017, but it did not reduce Plaintiff's symptoms of migraines. (R. at 33, 335). In March 2018, Plaintiff reported that the use of Cymbalta improved her migraines. (R. at 33, 339). It was also noted in July 2020 that Plaintiff showed

improvement with NSAIDS, and in October 2020 Plaintiff was doing well with the migraine medication Divalproex. (R. at 33, 462). The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). This evidence is clear and convincing that the alleged limitations of which Plaintiff complains are disparate to the medical evidence. It is also reasonable to theorize that more aggressive treatments such as injections or physical therapy are available to Plaintiff to which she does not avail herself.

In consideration of Plaintiff's daily living activities, Plaintiff avers that the ALJ ignored her testimony entirely. (Doc. 15 at 9). The Court finds this argument is misplaced. The ALJ acknowledged that Plaintiff has been able to perform daily activities despite recurring headaches and migraines. (R. at 34). The ALJ remarked that although it was a few months prior to Plaintiff's amended onset date of disability, Plaintiff advised her mental health providers that she engaged in daily Zumba lessons and could perform daily living activities and house chores without difficulty. (R. at 34, 372, 376, 380). It was also indicated in the record that Plaintiff cared for her elderly mother until she passed away in February 2018. (R. at 364). Additionally, the ALJ noted that during a December 2019 consultation, Plaintiff stated to the examiner, "…that she did not have any problems maintaining her personal hygiene, driving a vehicle, managing her finances, grocery shopping, preparing meals, and 'working on chores.'" (R. at 34, 431). The ALJ also took notice that in October 2020, Plaintiff reported during an examination that "routine activity does not aggravate" her headaches. (R. at 34, 471). "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694.

Plaintiff repeatedly calls into question that the ALJ also ignored part of her testimony regarding having to lie down in a dark room as a symptom of her migraines which renders her unable to work. (Doc. 15 at 6, 9, 12-13). However, as the Commissioner's argument points out, Plaintiff's ability to engage in daily living activities that require standing, walking, driving a car, preparing meals, shopping and looking after her elderly mother, is not consistent with Plaintiff's allegations of having to move slowly, lie down for a large amount of time and not have the ability to stand for more than five minutes. (Doc. 16 at 10). Plaintiff also clarified during her testimony that she may lay down for half an hour then sit down. (R. at 63). An ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

Furthermore, the ALJ also considered administrative non-examining consultant opinion evidence. (R. at 35). Both medical consultant reviews found that Plaintiff could perform work at the medium exertional level with limitations. (R. at 35, 82-84, 99-100). Despite these recommendations, the ALJ distinguished the findings regarding Plaintiff's physical impairments and found "the evidence does support medically determinable impairments that are severe albeit not disabling." (R. at 35). This demonstrates that the ALJ identified and considered Plaintiff's allegations of pain and specified a series of restrictions applicable to Plaintiff within a job setting. The ALJ ultimately reduced Plaintiff's RFC from medium to light work given the Plaintiff's limitations. (R. at 35).

Considering the scope of the record, the ALJ properly relied upon objective medical evidence, the effectiveness of Plaintiff's treatment, and the Plaintiff's daily activities to discount Plaintiff's testimony. There is sufficient evidence present to enable this Court to reasonably discern the ALJ's path to conclude that her decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

must be upheld." *Thomas*, 278 F.3d at 954. Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's claims and those reasons were supported by substantial evidence.

### B. The ALJ failed to specifically address the lay witness testimony, but this error is harmless.

Plaintiff argues that the ALJ failed to properly consider the lay witness testimony of Plaintiff's daughter to establish how migraine headaches impacted Plaintiff's ability to perform daily activities. (Doc. 15 at 15). In April 2019, the Plaintiff's daughter prepared a third-party function report describing Plaintiff's limitations in daily activities. (*Id.*, R. at 219-226). Plaintiff asserts that the ALJ ignored the statement entirely and the ALJ's decision fails to "contain any reference to this witness, or the specifics of her testimony" and Plaintiff reasons that failure to consider the testimony was harmful. (Doc. 15 at 16). The Court finds that Plaintiff's argument is without merit. Upon review of the ALJ's decision, the ALJ specifically referenced Plaintiff's daughter's statement regarding her daily activities. The ALJ wrote, "…[I]n a function report completed by the [Plaintiff's] daughter on her behalf, it was reported that the [Plaintiff] was able to cook, manage her finances, shop in the stores, and perform some of her personal care needs independently." (R. at 30). This statement establishes that the ALJ did in fact review the daughter's testimony, but the ALJ did not provide any reasoning for discounting the lay witness statement. *See Molina,* 674 F.3d at 1115. In *Molina*, "the ALJ gave reasons for rejecting [Plaintiff's] testimony regarding her symptoms that were equally relevant to the similar testimony of the lay witnesses, and that would support a finding that the lay testimony was similarly not credible." *Id*. This reasoning holds true for the present case, as well. However, "…lay witness testimony '*cannot* be disregarded without comment.'" *Id*. (citation omitted). While the Court finds that the ALJ erred in failing to provide any reasoning to disregard the lay witness statement, that error was harmless.

*Molina* discussed that, "…[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.' In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* (citations omitted). In the present case, the ALJ failed to discuss reasons for rejecting the Plaintiff's daughter's lay witness testimony. However, the daughter's testimony did not describe any limitations beyond what Plaintiff described herself, and as discussed above, the Court finds that the ALJ presented clear and convincing reasons based upon substantial evidence to reject Plaintiff's symptom testimony. Similar to Plaintiff's own testimony, the Plaintiff's daughter explained that Plaintiff sleeps to try and avoid pain. (R. at 219). Plaintiff's daughter noted that Plaintiff has no issues dressing herself, bathes every two days, cleans, washes dishes, cooks meals, shops in stores and drives a car. (R. at 220-23). Plaintiff's daughter also indicated that Plaintiff was limited in standing and walking long distances. (R. at 224). This testimony is duplicative of Plaintiff's own testimony. The ALJ determined that Plaintiff's claims regarding her migraines and headaches was not supported by the objective medical evidence in the record, the effectiveness of Plaintiff's treatment, and the Plaintiff's own testimony regarding her daily activities. The lay witness testimony described the same limitations as Plaintiff's own testimony, thus the ALJ's reasons for rejecting Plaintiff's testimony apply equally to the lay testimony. Therefore, the Court finds that the ALJ's failure to give specific reasons to reject the Plaintiff's daughter's lay witness testimony did not alter the ultimate nondisability determination. For that reason, the ALJ's error is harmless.[3]

## IV. CONCLUSION

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence and properly

---

[3] Given the Court's finding that harmless error applies in this case and remand is unnecessary, the Court need not address the Commissioner's arguments regarding the new regulations and whether § 404.1520c(d) supersedes Ninth Circuit precedent requiring "germane reasons" to reject lay witness statements. *E.g.*, *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

considered the medical evidence of record. Moreover, although the ALJ failed to specifically address the lay witness testimony, this error was harmless. Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence. The Court need not reach the merits of Plaintiff's request to remand or for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 13th day of December, 2022.

Douglas L. Rayes
United States District Judge